<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| **CHIN,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.: 11-3069 (ES)** |
| | : | |
| v. | : | <u>**OPINION**</u> |
| | : | |
| **XEROX CORPORATION, et. al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

<u>**S**ALAS, **D**ISTRICT **J**UDGE</u>

**I.      Introduction**

Pending before the Court is a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6) filed by Defendants Xerox Corporation ("Xerox"), Paul Heim, Louis Armour, and Matt Mahon (collectively, "Defendants").  (D.E. 5).  Plaintiff Betty Chin ("Plaintiff") had commenced this action in the Superior Court of New Jersey, Bergen County.  (D.E. 1, Notice of Removal ("Removal Notice"), at 2; Ex. A ("Compl.")).  Defendants, however, removed the action to this Court, alleging that removal was proper under 28 U.S.C. § 1441 because federal question jurisdiction exists under 28 U.S.C. § 1331.  (Removal Notice at 3).

The Court *sua sponte* raised the question of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3), and invited the parties to brief the subject matter jurisdiction issue.  (D.E. 19).  The Court now decides this issue without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons below, the Court finds that it lacks subject matter jurisdiction over this action.  Accordingly, the Court does not reach the merits of Defendants' motion to dismiss, and remands this action to the Superior Court of New Jersey, Bergen County.

## II.    Background

Xerox allegedly employed Plaintiff as a Customer Service Engineer from June 1984 until November 2010.  (Compl. ¶¶ 8, 10).  In or about 2005, however, Plaintiff was diagnosed with Lupus.  (*Id.* ¶ 13).  In or about 2008, Defendant Louis Armour, Plaintiff's manager, inquired as to why Plaintiff "had to drink so much water."  (*Id.* ¶ 19).  Plaintiff explained that "she had Lupus and that it was necessary for her to keep her kidneys flushed."  (*Id.* ¶ 20).  In or about January 2010, Defendant Armour was transferred and replaced with Defendant Matt Mahon, who then became Plaintiff's manager.  (*Id.* ¶ 22).

In April 2010, notwithstanding Plaintiff's objections, Defendant Mahon told Plaintiff that she was being involuntarily transferred to a different office that was near Monroe, New Jersey (the "Monroe location").  (*Id.* ¶¶ 25-29).  Plaintiff had explained to Defendant Mahon that she required access to her doctors for her medical condition and that the Monroe location would be "difficult" for her.  (*Id.* ¶¶ 26, 32).  In response, Defendant Mahon advised Plaintiff that the Monroe location would be close to a home she had recently purchased.  (*Id.* ¶¶ 23, 24, 33-35).  Defendant Mahon also told Plaintiff that she would be reporting to her former manager, Defendant Armour, at the Monroe location.  (*Id.* ¶¶ 30, 31).

The next day, however, Defendant Armour advised Plaintiff that she would actually be working in Trenton, New Jersey (the "Trenton location"), instead of at the Monroe location.  (*Id.* ¶ 39).  The Trenton location is even farther from Plaintiff's home than the Monroe location. (*Id.* ¶ 40).  Nevertheless, Plaintiff reported to the Trenton location.  (*Id.* ¶ 48).  There, Plaintiff

alleges that Defendants failed to properly acclimate her to the new location and "provide [her] with the information necessary for her to prepare to service the Trenton area." (*Id.* ¶¶ 49-53).

In May 2010, Plaintiff met with Defendant Paul Heim, a district manager. (*Id.* ¶ 63). In that meeting, Plaintiff allegedly expressed that "her medical needs could be accommodated simply by transferring back to the territory near where she lived." (*Id.* ¶ 65). In response, Defendant Heim, allegedly "dismissed any discussion of accommodating her medical needs" and reiterated that her transfer was final. (*Id.* ¶ 68). In response to Plaintiff's contention that she "carried a greater workload than her colleagues" in the Trenton location, Defendant Heim offered a "new scheduling program . . . which would resolve the workload disparities" after three months. (*Id.* ¶¶ 70-72). But the "scheduling disparity" continued "until the date of her termination in November 2010" because the new scheduling program was not implemented while Plaintiff was employed by Xerox. (*Id.* ¶¶ 73-74).

In June 2010, after Plaintiff's request to "leave the field early due to . . . extreme pain," Defendant Armour "stated to Plaintiff that in the couple of weeks since she had been transferred to his territory, she had been sick a lot." (*Id.* ¶ 81). Later, in September 2010, Defendant Armour allegedly "expressed his displeasure that Plaintiff had not returned his [telephone] calls" even though Plaintiff had advised Defendant Armour that she had a medical appointment that day. (*Id.* ¶¶ 87-88). Also in September 2010, Plaintiff was given the added responsibility of servicing the account of another Customer Service Engineer who had temporarily "went out on disability." (*Id.* ¶¶ 89-90). And in November 2010, even though Plaintiff was scheduled to be on vacation, Defendant Armour "called Plaintiff and told her that she needed to report to work" because "it was the end of the month and coverage was needed in the field." (*Id.* ¶¶ 96-97). In response to Plaintiff's explanation that "she had a medical appointment for Monday, November

29," Defendant Armour "asked Plaintiff to reschedule her medical appointment and come to work instead." (*Id.* ¶¶ 98-99). Plaintiff said she could not do so and explained that "she could come to work on Tuesday, November 30." (*Id.* ¶¶ 98, 100).

On November 30, 2010, Plaintiff was called into a district office where Defendant Armour informed her that Xerox was terminating her employment "due to reduction in work force." (*Id.* ¶¶ 104-105). Defendant Armour advised Plaintiff that she "needed to sign some papers and then she could have [a] car take her wherever she needed to go." (*Id.* ¶¶ 111-113). Plaintiff alleges that Defendant Armour "utilized undue influence and coercion to force Plaintiff to sign an alleged General Release on the spot" and thus "pressured Plaintiff into signing the General Release without giving her an opportunity to review it." (*Id.* ¶¶ 118-119). Defendant Armour then escorted Plaintiff out of the office. (*Id.* ¶ 125). Plaintiff was allegedly fifty-six years old when Xerox terminated her. (*Id.* ¶ 9).

In April 2011, Plaintiff filed this action against Defendants in the Superior Court of New Jersey, Bergen County, alleging the following seven counts: violations under the New Jersey Law Against Discrimination (Counts One & Two); the unenforceability of the "General Release" (Count Three); Defendant Xerox's liability under respondent superior (Count Four); violation of company policy (Count Five); violation of public policy (Count Six); and, intentional infliction of emotional distress (Count Seven). (Removal Notice at 2; Compl. ¶¶ 133-218). Defendants subsequently removed the action to this Court on the basis that Plaintiff's complaint asserts a federal question under 28 U.S.C. § 1331. (Removal Notice at 3).

Specifically, as a basis for removal, Defendants asserted that Count Three of Plaintiff's complaint "alleges violations of the federal Older Workers Benefit Protection Act, 29 U.S.C. § 626(f)" (the "OWBPA") and "seeks relief under that federal law." (*Id.* at 2). In further support

of removal, Defendants referenced Plaintiff's allegation in Count Six "that she was wrongfully discharged in violation of the public policies embodied in Title VII of the Civil Rights Act of 1964 . . . and the Americans with Disabilities Act . . . ." (*Id.* at 3).

Thereafter, Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  (D.E. 5).  But, before ruling on Defendants' motion to dismiss, the Court invited the parties to submit additional briefing as to whether this Court has subject matter jurisdiction over Plaintiff's claims (D.E. 19), which the parties accordingly provided to the Court, (D.E. 22, Plaintiff's Letter Brief on Subject Matter Jurisdiction ("Pl. SMJ Br."); D.E. 23, Defendants' Letter Brief on Subject Matter Jurisdiction ("Def. SMJ Br.")).

Because Defendants, as the removing party, have failed to meet their burden in establishing that this Court has subject matter jurisdiction, the Court must remand this action to state court.

## III.   Legal Standard

Removal of a state court action to federal court is proper only if the federal court would have had original jurisdiction over the matter.  *See* 28 U.S.C. § 1441(a)-(b).  "In order to provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction in federal-question cases . . . ."  *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005).  28 U.S.C. § 1331 provides that the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Section 1331's "all civil actions arising under" language "has been interpreted to ensure that only cases 'in which a well-pleaded complaint establishes either [1] that federal law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law' come into federal court under the

court's federal question jurisdiction." *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 82 n.8 (3d Cir. 2011) (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983)).[1]

Under this "well-pleaded complaint rule," the plaintiff is "the master of the claim" and "he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 310 (3d Cir. 1994) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule' . . . .  The rule makes the plaintiff the master of the claim . . . .") (internal quotations omitted).

Notably, federal jurisdiction is available where the claim "is 'really' one of federal law." *Franchise Tax Bd.*, 463 U.S. at 13.  The Third Circuit has explained that "a state cause of action is 'really' a federal cause of action which may be removed to federal court if the 'federal cause of action completely preempts . . . [the] state cause of action.'" *Goepel*, 36 F.3d at 310 (quoting *Franchise Tax Bd.*, 463 U.S. at 13).  This principle is known as the "complete preemption doctrine" and is "a distinct concept from ordinary preemption." *Goepel*, 36 F.3d at 310 (internal quotations omitted).[2]

---

[1] "Congress also has granted district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens." *Exxon Mobil Corp.*, 545 U.S. at 552 (citing 28 U.S.C. § 1332).  The Third Circuit "require[s] the party seeking to remove to federal court to demonstrate federal jurisdiction." *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 151 (3d Cir. 2009).  In this action, Defendants have alleged jurisdiction under 28 U.S.C. § 1331.  Indeed, Defendants' basis for removal is federal question jurisdiction and Defendants have not otherwise argued that diversity jurisdiction is proper.  (*See* Removal Notice at 3 ("Plaintiffs Complaint . . . asserts a federal question under 28 U.S.C. § 1331 and is removable under 28 U.S.C. § 1441(b)"); D.E. 23, Def. SMJ Br., at 1 ("[T]his court does have proper jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff is asserting claims under federal law . . . .")).

[2] "This same principle has been referred to elsewhere as the 'artful pleading doctrine', under which a court will not allow a plaintiff to deny a defendant a federal forum when the plaintiff's complaint contains a federal claim 'artfully pled' as a state law claim." *Goepel*, 36 F.3d at 311 n.5.

Finally, the Third Circuit "require[s] the party seeking to remove to federal court to demonstrate federal jurisdiction." *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 151 (3d Cir. 2009).  Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Furthermore, a federal court must raise the subject matter jurisdiction inquiry *sua sponte* when subject matter jurisdiction is in question.  *See Shaffer v. GTE North, Inc.*, 284 F.3d 500, 502 (3d 2002) ("[W]e raise[] the matter [of subject matter jurisdiction] sua sponte-as every court is obligated to do when subject matter jurisdiction is in question.").  Indeed, "failure to challenge removal cannot confer subject matter jurisdiction which it does not otherwise possess upon the federal district court."  *See Medlin v. Boeing Vertol Co.*, 620 F.2d 957, 960 (3d Cir. 1980).

Moreover, "[b]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand."  *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996) (internal quotations omitted); *see also Horizon Blue Cross Blue Shield of New Jersey v. East Brunswick Surgery Ctr.*, 623 F.Supp.2d 568, 572 (D.N.J. 2009) ("Generally, a party seeking removal faces an uphill battle as section 1441 must be strictly construed against removal.").

## IV.  Discussion

Defendants argue that the Court has jurisdiction over this action because Plaintiff is asserting claims under the OWBPA.  (Def. SMJ Br. at 1).  Specifically, Defendants argue that "Plaintiff is in fact seeing affirmative relief under OWBPA" because, in her complaint, Plaintiff alleges that the "General Release does not meet the requirements of the Older Workers Benefit Protection Act or the Age Discrimination in Employment Act."  (Def. SMJ Br. at 2 (quoting

Compl. ¶ 182)).  The Court therefore interprets Defendants' argument to mean that Plaintiff's claim is, on its face, a federal cause of action.

Furthermore, Defendants argue that Plaintiff must be challenging the enforceability of the "General Release" under the OWBPA because, if she didn't, she would be "required to repay all of the salary continuation she received for signing the General Release *and* [would be] responsible to pay all of Defendants' legal costs and attorneys' fees in defending [a] lawsuit." (*Id.* at 2-3).  Defendants argue that this explains why Plaintiff "relies so heavily on OWBPA in her Brief in Opposition to the Motion to Dismiss, where she asserts that the Release is 'unenforceable on its face' because it allegedly does not comply with OWBPA . . . ."  (*Id.* at 3). Defendants also argue that this is why Plaintiff did not move to remand this action or move to amend her complaint.  (*Id.* at 3, 5).

Plaintiff, however, submits that "this matter should be remanded to the Superior Court of New Jersey."  (Pl. SMJ. Br. at 1).  Plaintiff argues that she has not asserted claims under federal statutes in her complaint, but rather has referenced certain federal statutes as evidence of public policy.  (*Id.* at 2).  Specifically, Plaintiff argues that Count Three is a common law claim and she referenced the OWBPA as evidence of public policy that the "General Release" is unenforceable. (*Id.*).  Similarly, in Count Six, Plaintiff argues that Title VII of the Civil Rights Act of 1964 and the Americans With Disabilities Act are also cited as references to public policy.  (*Id.*).  Plaintiff accordingly asks the Court to remand this action to state court.  (*Id.* at 4).

The Court finds that Plaintiff has not actually alleged a violation of the OWBPA. (Compl. ¶¶ 170-193).  Rather, in Count Three, Plaintiff's complaint alleges that "Defendants used undue influence and coercion to impel Plaintiff to sign the General Release . . . .  The General Release signed by Plaintiff is, therefore, unenforceable . . . ."  (*Id.* ¶ 193).  Plaintiff

explains that the OWBPA is referenced, "not as a substantive cause of action, but as evidence of public policy in support for Plaintiff's claim that the General Release she signed . . . is not enforceable." (Pl. SMJ Br. at 2). It was Plaintiff's prerogative to assert that Defendants' actions were improper under the OWBPA, but Plaintiff did not confine her claims as such. *See Williams v. Township of Middle*, No. 08-4705, 2010 WL 3502701, at *2 (D.N.J. Aug. 30, 2010) ("Even though the events described in plaintiff's complaint could also possibly support federal . . . claims, it is plaintiff's prerogative to assert, or not, such claims."); *State of N.J. v. City of Wildwood*, 22 F.Supp.2d 395, 401 (D.N.J. 1998) ("Even if the facts in plaintiff's complaint could establish a federal cause of action, the plaintiff's choice to proceed on purely state-law grounds in state court must be respected.").[3]

Furthermore, Defendants' reliance on Plaintiff's allegation that "Defendants did not give Plaintiff forty-five . . . days to consider the General Waiver before signing it" is unpersuasive. (Def. SMJ Br. at 2 (quoting Compl. ¶ 183)). Defendants argue that "there is no requirement under New Jersey state law that an individual be given 45 days in which to consider a release." (Def. SMJ Br. at 2). Defendants therefore suggest that Plaintiff must be bringing a claim under the OWBPA, which has this 45-day requirement. (*See id.*). This argument, however, is entirely appropriate as a defense in state court because Plaintiff concedes that Count Three is a common law claim under state law. (*See* Pl. SMJ Br. at 2-3 (explaining that Plaintiff filed a "common law claim that the General Release [P]laintiff signed . . . is unenforceable" and that the "causes of action in the instant matter . . . arise from state law . . . .")). Moreover, it is conceivable that

---

[3] In briefing their motion to dismiss, Defendants asserted that "OWBPA applies only to claims under the federal ADEA" and that "Plaintiff is not asserting an ADEA claim." (D.E. 10, Defendants' Reply Brief, at 5). Indeed, District Courts have "concluded that the OWBPA's waiver requirements do not create an independent cause of action." *Baker v. Washington Group Int'l, Inc.,* No. 06-1874, 2008 WL 351396, at *2 (M.D.Pa. Feb. 7, 2008) (collecting cases finding that OWBPA's waiver requirements do not create an independent cause of action). The Court need not reach this issue, however, because the Court finds that Plaintiff did not assert any federal causes of action in her complaint.

Plaintiff set forth the requirements of the OWBPA to help illustrate the policy behind the OWBPA. *See Brown*, 75 F.3d at 865 ("[T]he removal statute should be strictly construed and all doubts resolved in favor of remand."). Similarly, Defendants argue that Plaintiff's allegations of "unlawful actions" (Compl. ¶¶ 190 & 192) and "unlawful acts" (*Id.* ¶ 191) support that "Plaintiff is relying upon OWBPA." (Def. SMJ Br. at 2). These general allegations, however, are entirely consistent with Plaintiff's contention that Count Three is a common law claim under state law. *See Brown*, 75 F.3d at 864-865.

To be sure, Plaintiff also references federal statutes in Count Six of her complaint. (Compl. ¶ 211). There, Plaintiff alleges that her termination "was in violation of a clear mandate of public policy against discrimination on the basis of a disability as described in such sources as Title VII of the Civil Rights Act . . . and the Americans with Disabilities Act." (*Id.*). Plaintiff, however, unequivocally asserts that the "causes of action in the instant matter . . . arise from state law and are not within the small category of cases that arise under federal law." (*Id.* at 3-4). The Court agrees. These references are insufficient to confer federal jurisdiction and the Court refuses to create a federal cause of action here. *See Brown v. Parsons Inspection*, No. 12-1652, 2012 WL 4955252, at *3 (D.N.J. Oct. 16, 2012) ("Plaintiff is the 'master of the complaint,' . . . and he has given no indication that he wishes to pursue a federal . . . claim."); *see also JVC Americas Corp. v. CSX Intermodal Inc.*, 292 F.Supp.2d 586, 592 (D.N.J. 2003) ("Generally, federal courts have found that cases should be remanded when federal law is merely 'referenced' or 'mentioned' in the claim.").

Nevertheless, even if a plaintiff has not asserted a federal cause of action on the face of the complaint, the Supreme Court has ruled that federal jurisdiction may be available in the following two situations: (1) if "it appears that some substantial, disputed question of federal law

is a necessary element of one of the well-pleaded state claims" or (2) if it appears that the plaintiff's claim "is 'really' one of federal law."  *See Franchise Tax Bd.*, 463 U.S. at 13; *Scott v. Sysco Food Serv. of Metro New York, L.L.C.*, No. 07-3656, 2007 WL 3170121, at *3 (D.N.J. Oct. 26, 2007).  Defendants, however, have failed to argue, much less persuade this Court, that either situation exists here.  (*See generally* Def. SMJ Br.).

For instance, to show that Plaintiff's claim is "really" a federal cause of action, Defendants would have to show that there is a federal cause of action that completely preempts any state cause of action.  *See Goepel*, 36 F.3d at 310.  But Defendants do not raise any preemption argument whatsoever.  (*See generally* Def. SMJ Br.); *Cf. Scott*, 2007 WL 3170121, at *3 (explaining that removing party had argued that federal jurisdiction was proper because there was a substantial, contested federal issue and/or because the complete preemption doctrine was satisfied).  As the removing party, Defendants urge that federal jurisdiction is proper and therefore "bear[] the burden of proving that jurisdiction exists."  *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).  Given Defendants' silence with respect to the two situations described by the Supreme Court in *Franchise Tax Bd.*, the Court finds that Defendants have not met their burden of proving that federal jurisdiction exists.  *See* 463 U.S. at 13; *Brown*, 75 F.3d at 865.

Finally, as Defendants correctly observe, Plaintiff did not amend her complaint or move for remand.  (Def. SMJ Br. at 3, 5).  But this does not permit the Court to infer an affirmative federal claim where there is none.  *See Williams*, 2010 WL 3502701, at *3 (remanding action to state court because complaint lacked "an affirmative federal claim," even though "Plaintiff did not amend his complaint" and "also did not move for remand").

In short, Plaintiff has given no indication that she actually wishes to pursue a federal cause of action for either Count Three or Count Six.  (*See, e.g.*, Pl. SMJ Br. at 3 ("The causes of action in the instant matter . . . arise from state law . . . .")).  Under the "well-pleaded complaint rule," the plaintiff is "the master of the claim" and "he or she may avoid federal jurisdiction by exclusive reliance on state law."  *Caterpillar*, 482 U.S. at 392; *see also Parsons Inspection*, 2012 WL 4955252, at *3 ("Plaintiff is the 'master of the complaint' . . . and he has given no indication that he wishes to pursue a federal . . . claim.") (citations omitted); *Scott*, 2007 WL 3170121, at *3 ("Insofar as Plaintiff has not 'omitt[ed] to plead necessary federal questions' but rather has chosen to abandon this federal claim, there is no basis for federal question jurisdiction.") (quoting *Franchise Tax Bd.*, 463 U.S. at 22)).  Accordingly, the Court must remand this action to state court.  *See Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 214 (3d Cir. 1997) ("[W]hen a federal court has no jurisdiction of a case removed from a state court, it must remand and not dismiss on the ground of futility.").

## V.    Conclusion

For these reasons, the Court dismisses Plaintiff's complaint for lack of subject matter jurisdiction and remands this matter to the Superior Court of New Jersey, Bergen County.


_s/Esther Salas_
**Esther Salas**